UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRESTBROOK INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP PRYOR, INDERJIT SINGH, and AMARJIT KAUR,<br><br>Defendants. | CAUSE NO. 1:23-cv-01122 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now Plaintiff, CRESTBROOK INSURANCE COMPANY, ("Crestbrook"), by counsel, and for its Complaint for Declaratory Judgment against Defendants PHILIP PRYOR ("Pryor"), INDERJIT SINGH ("Singh"), and AMARJIT KAUR ("Kaur"), seeks an order and judgment from this Court declaring that Crestbrook has no duty to defend, indemnify, and/or pay any settlement, judgment, verdict, or award under any policies of insurance issued by Crestbrook to defendant Pryor in an underlying lawsuit filed by Singh and Kaur. In support of this Complaint, Crestbrook alleges and avers as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Crestbrook is now and has been at all times relevant hereto an Ohio insurance company with its principal place of business in Columbus, Ohio. Crestbrook is not a mutual insurance company. Crestbrook is therefore a Citizen of the State of Ohio for jurisdictional purposes.

2.      Defendant Pryor is now and has been at all times relevant hereto an individual whose residence and domicile is located in Zionsville, Boone County, Indiana. Pryor is

1

therefore a Citizen of the State of Indiana for jurisdictional purposes.

3.      Defendant Singh is now and has been at all times relevant hereto an individual whose residence and domicile is located in Zionsville, Boone County, Indiana.  Singh is therefore a Citizen of the State of Indiana for jurisdictional purposes.

4.      Defendant Kaur is now and has been at all times relevant hereto an individual whose residence and domicile is located in Zionsville, Boone County, Indiana.  Kaur is therefore a Citizen of the State of Indiana for jurisdictional purposes.

5.      The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00 excluding interest and costs.

6.      This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201.  An actual and substantial controversy exists between the parties.  Plaintiff Crestbrooks seeks declarations that there is no coverage for Pryor in connection with an underlying lawsuit filed by defendants Singh and Kaur.

7.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to this cause of action, namely the availability of insurance coverage under certain policies of insurance issued by Crestbrook to Pryor in the State of Indiana, occurred in this District and Division.

FACTUAL ALLEGATIONS

*The Underlying Singh Action*

8.      On or about March 23, 2023, defendants Inderjit Singh and Amarjit Kaur filed the lawsuit titled *Singh v. Philip Pryor and Crestbrook Ins. Co.,* in the Boone Superior Court, State of Indiana, under Cause No. 06D01-2303-PL-000420 (the "Singh Action"), against Phillip Pryor and Crestbrook. A true and accurate copy of the original Complaint filed in the

Singh Action is attached hereto and incorporated herewith as Exhibit "A."

9.    The claims against Crestbrook in the Singh Action relate to certain policies of insurance issued by Crestbrook directly to Singh and Kaur, and do not concern any policies of insurance that are at issue in this lawsuit.

10.    As against Pryor, the Complaint alleges that in 2015 Pryor purchased real estate at 3553 Sugar Pine Lane, Zionsville, IN 46077 (the "Property").

11.    The Complaint alleges that sometime in April 2017, the roof of the Property was damaged by a hailstorm; that Pryor made a claim under his homeowners policy with Crestbrook for the hail damage; and that Crestbrook paid this claim for a total of $81,477.37, but that Pryor did not have the roof repaired or replaced.

12.    The Complaint alleges that in September 2020, Pryor prepared certain disclosures in connection with the sale of the Property.

13.    In those disclosures, the Complaint alleges that Pryor indicated that he did not know the age of the roof, was not aware of present damage to the roof, if there was more than one layer to the roof, and that there were no structural problems with the Property or substantial alterations to the Property (like roof repairs).

14.    The Complaint alleges that on or about January 10, 2021, Pryor entered a Purchase Agreement for the Property with Singh and Kaur.

15.    The Complaint alleges that Singh and Kaur had an inspection of the Property conducted on January 27, 2021, during which the inspector purportedly stated that the roof was a "major concern," that the roof was approximately 17-19 years old, and that there were previous signs of patching done to the roof.

16.    Closing on the Property was scheduled to occur March 31, 2021.

17.    On March 27, 2021, the Complaint alleges that another hail event occurred, and so Pryor entered into a "Hail Assignment" with Singh and Kaur, assigning them the

right to receive any/all of Pryor's insurance proceeds if Pryor's insurance was responsible for the March 2021 hail damage.

18.      The Complaint alleges that closing on the Property occurred on April 5, 2021, but that Pryor never reported the March 2021 hail damage claim to Crestbrook.

19.      Another hail event purportedly occurred on June 18, 2021, for which Plaintiffs made a claim under their own insurance with Crestbrook.

20.      The Complaint alleges that Crestbrook denied this claim because it determined that prior hail damage to the roof had not been repaired.

21.      In the Singh Action, the underlying plaintiffs assert the following causes of action against Pryor: (1) Fraud; (2) Constructive Fraud; (3) Fraudulent Misrepresentation in Seller's Residential Real Estate Disclosures against Pryor; (4) Violation of Indiana Crime Victim's Relief Act IC 34-23-3-1; (5) Breach of Purchase Agreement; and (6) Breach of Assignment Contract.

22.      Singh and Kaur seek compensatory, incidental, emotional/mental distress, and punitive damages against Pryor.

23.      Pryor tendered the Singh Action to Crestbrook for insurance coverage, defense and indemnity.

24.      By letter dated June 26, 2023, Crestbrook advised Pryor that it was denying coverage for the Singh Action under the applicable policies of insurance issued by Crestbrook to Pryor.  A true and correct copy of the June 26, 2023, coverage correspondence is attached hereto and incorporated herewith as Exhibit "B."

### The Crestbrook Primary and Excess Policies

25.      Crestbrook issued a Personal Homeowners Policy to Philip and Courtney Pryor, policy number HO00107712-05, for the period January 30, 2021, to January 30, 2022

(the "Primary Policy.")  A certified copy of the Primary Policy is attached hereto and incorporated herewith as Exhibit "C."

26.    Crestbrook also issued a Personal Excess Liability Policy to Philip and Courtny Pryor, policy number PX00107714-05, for the period January 30, 2021, to January 30, 2022 (the "Excess Policy"). A certified copy of the Primary Policy is attached hereto and incorporated herewith as Exhibit "D."

27.    The Primary Policy provides Personal Liability Coverage, as follows:

> SECTION II — LIABILITY COVERAGES
> A. Coverage E — Personal Liability
> If a claim is made or a suit is brought against an "insured" for "damages" due to "bodily injury", "property damage" or "personal injury" caused by an "occurrence" resulting from negligent personal acts anywhere in the world, or negligence arising out of the ownership, maintenance or use of real or personal property at an "insured location" to which coverage applies, we will:
> 1. Pay up to our limit of liability for the "damages" which an "insured" is legally liable. "Damages" include prejudgment interest awarded against an "insured"; and
> 2. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment or a judgment or settlement.

(Ex. C, p. 51)

28.    The Primary Policy includes the following relevant definitions:

> 6. ""Bodily Injury" means bodily harm, sickness or disease, including required care, loss of services, and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

> 22. "Occurrence" means:
> a. An accident, including continuous or repeated exposure to the same general conditions which results in "bodily injury", "property damage" or "personal injury" caused by an "insured";
> b. The "occurrence" resulting in "bodily injury" or "property damage" must be during the policy period. The "occurrence" resulting in "personal injury" must have first taken place during the policy period.

With respect to "personal injury" covered under this policy and under any prior and subsequent policies issued by us to you, all continuous, repeated or related "occurrences" shall be treated as a single "occurrence" and shall be deemed to occur at the time of the first act.

23. "Personal injury" means injury arising out of one or more of the following:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, "dwelling" or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication in any manner, including electronic publication, of material that violates a person's right to privacy.

25. "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

(Ex. C, pp. 21, 24, 25)

29.    There is no coverage, and thus no duty to defend or indemnify Pryor, under the

Primary Policy in the first instance because the Singh Action is not a suit for "damages" due

to "bodily injury," "property damage," or "personal injury" caused by an "occurrence."

30.    The Primary Policy also contains certain exclusions, which apply to bar or limit

coverage for the Singh Action, including but not limited to the following:

**SECTION II — LIABILITY EXCLUSIONS**
A. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to "bodily injury", "property damage" or "personal injury" from the following:

1. Expected or Intended Injury
Arising out of a willful, malicious, fraudulent or dishonest act or any act which is intended by any "insured", or that may be reasonably expected to result from such act to cause or result in "bodily injury", "personal injury" or "property damage, even if the resulting injury or damage:
   a. Is of a different kind, quality or degree than initially expected or intended; or
   b. Is sustained by a different person, entity or property than initially expected or intended….

6

2. Criminal Acts

Arising out of an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime.

## B. Coverage E — Personal Liability

Coverage E — Personal Liability does not apply to:

2. Contractual Liability

Any loss arising from any contract or agreement entered into by an "insured".

However, this Exclusion B.2. does not apply to written contracts:

a. That directly relate to the ownership, maintenance or use of an "insured location"; or

b. Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in B.1. above or elsewhere in this policy.

3. "Insured's" Property

"Property damage" to property owned, produced or distributed by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

4. Property of Others

"Property damage" to property rented to, occupied or used by, or in the care of an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore of maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location"….

5. Sale of Property

Arising out of any written or oral agreement made by you or others on your behalf which is related to the sale of any property….

10. Financial Guarantees

Arising out of any "insured's" financial guarantee of the financial performance of any "insured", other individual or organization.

11. Punitive or Exemplary Damages

Arising out of any of the following:

a. Judgments;

b. Costs;

c. Attorney fees; or

d. Claims;

against an "insured" for punitive or exemplary "damages". Punitive or exemplary "damages" also include any "damages" awarded pursuant to

statute in the form of double, treble or other multiple "damages" in excess of compensatory "damages". In addition, coverage does not apply for restitution, if the result of a criminal court order.

(Ex. C, pp. 54, 60, 61)

      31.     The Excess Policy also contains the following relevant terms and conditions:

1. Excess Liability Coverage
We will pay "damages" an "insured" is legally obligated to pay because of an "occurrence" covered by this policy anywhere in the world:
a. In excess of the "required underlying insurance" or the minimum required underlying limits shown in the Declarations, whichever is greater. This coverage will "follow form"; or
b. From the first dollar of "damages" where coverage provided by "required underlying insurance" does not apply or "required underlying insurance" is not required, unless stated otherwise or an exclusion applies.

* * *

6. Defense Coverage and Claims Expense

a. We will defend a suit against an "insured", with attorneys of our choice, resulting from an "occurrence" covered by this policy and where:

(1) The "required underlying insurance" has been exhausted by payment of claims; or

(2) No "required underlying insurance" applies;

even if the allegations of the suit are groundless, false or fraudulent. We provide this defense at our expense….

c. We have the right, but not the duty, to defend any suit against an "insured" seeking "damages" covered under this policy and also covered by the "required underlying insurance" shown in the Declarations. We may join, at our own expense, with the "insured" or any insurer who provides coverage for an "occurrence" in a "listed underlying policy" in the investigation, defense and settlement of any claim or suit that we believe may require payment under this policy. However, we will not contribute to costs and expenses incurred by any other insurer who provides coverage in a "listed underlying policy", and which an insurer of such underlying policy(ies) s obligated to provide.

d. When Our Duty to Defend Ends

8

Our duty to defend any "insured" against any claim or suit arising out of any one "occurrence" ends when the amount we have paid in "damages" for that "occurrence" equals the Personal Excess Liability Policy Limit shown in the Declarations.

(Ex. D, pp. 23, 25)

32.      The Excess Policy also contains the following applicable definitions:

6. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

8. "Damages" means the sum required to satisfy a covered claim, whether settled or agreed to in writing by us or resolved by judicial process or review.

13. "Follow form" means the coverage provided under this policy shall apply to the extent it is provided under "required underlying insurance", following the terms, definitions, conditions and exclusions of the "required underlying insurance".

21. "Occurrence" means an accident, including continuous or repeated exposure to the same general conditions which results in "bodily injury", "property damage" or "personal injury" caused by an "insured". The "occurrence" resulting in "bodily injury" or "property damage" must be during the policy period. The "occurrence" resulting in "personal injury" must have first taken place during the policy period.
With respect to "personal injury" covered under this policy and under any prior and subsequent policy(ies) issued by us to you, all continuous, repeated or related "occurrences" shall be treated as a single "occurrence" and shall be deemed to occur at the time of the first such act.

23. "Personal injury" means injury arising out of one or more of the following:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication in any manner, including electronic publication, or material that violates a person's right of privacy.

25. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

27. "Required underlying insurance" means the policy or policies providing an "insured" primary liability coverage that is required to be maintained in force for the types of exposures listed and at no less than the minimum limits as scheduled in the Declarations.

(Ex. D, pp. 18, 19, 21, 22)

33.    There is no coverage, and thus no duty to defend or indemnify Pryor, under the

Excess Policy in the first instance because the Singh Action does not seek "damages" because

of an "occurrence."

34.    The Excess Policy also contains the following applicable exclusions that apply

to bar or limit coverage for the Singh Action:

### EXCLUSIONS

There is no coverage under this policy for any of the following:

1. Expected or Intended Injury
Arising out of a willful, malicious, fraudulent or dishonest act or any act which is intended by an "insured", or that may be reasonably expected to result from such act to cause or result in "bodily injury", "personal injury" or "property damage", even if the resulting injury or damage:
a. Is of a different kind, quality or degree than initially expected or intended; or
b. Is sustained by a different person, entity or property than initially expected or intended….

2. Criminal Acts
Arising out of an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged or convicted of a crime….

25. Contractual Liability
Arising from any contract or agreement entered into by an "insured":
However, this exclusion does not apply to written contracts:
a. That directly relate to the ownership, maintenance or use of an "insured location"; or
b. Where the liability of others is assumed by you prior to an

10

"occurrence"; unless excluded elsewhere in this policy.

26. "Insured's" Property
"Property damage" to property owned, produced or distributed by an "insured". This includes costs or expenses incurred by an "insured" or others at the direction of an "insured" to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

27. Property of Others
For "property damage" to property of others rented to, occupied or used by, or in the care, custody or control of, an "insured"….

31. Punitive Damages
Arising out of any of the following:
a. Judgments;
b. Costs;
c. Attorney's fees; or
d. Claims
against an "insured" for punitive or exemplary "damages". Punitive or exemplary "damages" also include any "damages" awarded pursuant to statute in the form of double, treble or other multiple "damages" in excess of compensatory "damages". In addition, coverage does not apply for restitution, if the result of a criminal court order….

38. Sale of Property
Arising out of any written or oral statement made by you or others on your behalf which is related to the sale of any property….

40.Financial Guarantees
Arising out of any "insured's" financial guarantee of the financial performance of any "insured", other individual or organization.

(Ex. D, pp. 26, 30-33)

## COUNT I: DECLARATORY JUDGMENT

35.     Plaintiff hereby reiterates and incorporates by reference the material allegations set forth in Paragraphs 1 through 34 herein.

36.     The claims, allegations, and damages sought against Pryor in the Singh Action are based upon fraudulent misrepresentations as to the condition of the Property in connection with the sale of the Property, violations of the Indiana Crime Victim's Relief Act,

11

and breach of contract (i.e., the Purchase Agreement and Hail Assignment).

37.    There is no coverage for the claims, causes of action, and damages claimed against Pryor in the Singh Action under the Primary Policy.

38.    Accordingly, Crestbrook has no duty to defend, indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of Pryor in connection with the Singh Action under the Primary Policy.

39.    There is no coverage for the claims, causes of action, and damages claimed in the Singh Action under the Excess Policy.

40.    Accordingly, Crestbrook has no duty to defend, indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of Pryor in connection with the Singh Action under the Excess Policy.

41.    Defendants Singh and Kaur are named as nominal but indispensable parties to this litigation, because they are the underlying plaintiffs and claimants who may be impacted by the insurance coverage available to Pryor under the Primary and Excess Policies, and they should be bound by any determination with regard to insurance coverage under the policies made herein.

WHEREFORE, Plaintiff Crestbrook Insurance Company ("Crestbrook") hereby requests that this Court enter declaratory judgment that Crestbrook has no duty to defend and/or indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of Defendant Philip Pryor in connection with the underlying claims and/or Singh Action; that; that defendants Singh and Kaur are equally bound by this judgment; and all such other proper relief in the premises.

LEWIS WAGNER, LLP


By  s/ MEGHAN E. RUESCH

MEGHAN E. RUESCH, #32473-49
EDMUND L. ABEL, #36293-49
Counsel for Plaintiff Crestbrook Insurance
Company

## PRAYER FOR RELIEF

WHEREFORE, Crestbrook Insurance Company ("Crestbrook") prays that this court enter judgment as follows:

1.      Declaring that Crestbrook has no obligation to defend, indemnify, or otherwise provide coverage for Defendant Philip Pryor ("Pryor"), or to pay any claim, settlement, judgment, verdict, or award in connection with any claim or suit arising out of or in connection with the Singh Action, under the policies of insurance at issue in this action;

2.      Declaring that Inderjit Singh and Amarjit Kaur are equally bound by the determination and judgment of the Court in this declaratory judgment action; and

3.      For all other proper relief in the premises.

LEWIS WAGNER, LLP

By  s/ MEGHAN E. RUESCH
     MEGHAN E. RUESCH, #32473-49
     EDMUND L. ABEL, #36293-49
     Counsel for Plaintiff Crestbrook Insurance
     Company