UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRESTBROOK INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP PRYOR, INDERJIT SINGH, and AMARJIT KAUR,<br><br>Defendants. | CAUSE NO. 1:23-cv-01122-MPB-TAB |

## CONSENT JUDGMENT

This matter before the Court upon the agreement of Plaintiff, Crestbrook Insurance Company ("Crestbrook"), and Defendants Philip Pryor ("Pryor"), Inderjit Singh ("Singh"), and Amarjit Kaur ("Kaur") for entry of judgment in this action. The Court makes no factual findings, but Plaintiff and all Defendants stipulate to each of the following:

1. WHEREAS, Crestbrook issued a Personal Homeowners Policy to Pryor, policy number HO00107712-05, for the period January 30, 2021, to January 30, 2022 ("The Primary Policy"); and

2. WHEREAS, Crestbrook also issued a Personal Excess Liability Policy to Philip and Courtny Pryor, policy number PX00107714-05, for the period January 30, 2021, to January 30, 2022 ("The Excess Policy"); and

3. WHEREAS, this Lawsuit concerns only claims for liability coverage under the Primary Policy and the Excess Policy in connection with an underlying

lawsuit filed by Defendants Singh and Kaur; and

4.      WHEREAS, on March 23, 2023, Defendants Singh and Kaur filed the lawsuit titled *Inderjit Singh and Amarjit Kaur v. Crestbrook Insurance Company, et al.*, in Boone County Superior Court, Cause No. 06D0-2303-PL-000420 (the "Singh Action"); and

5.      WHEREAS, in the Complaint in the Singh Action, Defendants, Singh and Kaur, allege, in part, that Singh and Kaur purchased the property located at 3553 Sugar Pine Lane, Zionsville, IN 46077 (the "Property") from Pryor on March 31, 2021; and

6.      WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in part, that the Property suffered hailstorm damage from a hail event that occurred on or about April 27, 2017; and

7.      WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in part, that Pryor submitted claims for this hail event to his Homeowner's insurance carrier, Crestbrook, and that Crestbrook paid this claim, but Pryor never used the insurance claim proceeds to repair the damage to the roof; and

8.      WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in part, that Pryor did not disclose the prior roof damage to Singh and Kaur before entering into a Purchase Agreement with them for the Property; and

9.      WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in part, that a possible hail event occurred on or about March 27, 2021; and

10.     WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in

part, Pryor entered into a "Hail Assignment" with Singh and Kaur assigning them any and all insurance proceeds from the possible hail event on or about March 27, 2021,

11. WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege, in part, that Pryor never reported the March 2021 storm to his insurer; and

12. WHEREAS, in the Singh Action, Defendants, Singh and Kaur, allege against Pryor, claims of fraud; constructive fraud; Fraudulent Misrepresentation in Seller's Residential Real Estate Disclosures against Pryor; Violation of Indiana Crime Victim's Relief Act IC 34-23-3-1; Breach of Purchase Agreement; and Breach of Assignment Contract; and

13. WHEREAS, The Primary Policy provides Personal Liability Coverage, as follows:

> SECTION II — LIABILITY COVERAGES
> A. Coverage E — Personal Liability
> If a claim is made or a suit is brought against an "insured" for "damages" due to "bodily injury", "property damage" or "personal injury" caused by an "occurrence" resulting from negligent personal acts anywhere in the world, or negligence arising out of the ownership, maintenance or use of real or personal property at an "insured location" to which coverage applies, we will:
> 1. Pay up to our limit of liability for the "damages" which an "insured" is legally liable. "Damages" include prejudgment interest awarded against an "insured"; and
> 2. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment or a judgment or settlement.

;and

14. WHEREAS, the Primary Policy includes the following relevant definitions:

> 6. ""Bodily Injury" means bodily harm, sickness or disease, including required care, loss of services, and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.
>
> 22. "Occurrence" means:
> a. An accident, including continuous or repeated exposure to the same general conditions which results in "bodily injury", "property damage" or "personal injury" caused by an "insured";
> b. The "occurrence" resulting in "bodily injury" or "property damage" must be during the policy period. The "occurrence" resulting in "personal injury" must have first taken place during the policy period.
>
> With respect to "personal injury" covered under this policy and under any prior and subsequent policies issued by us to you, all continuous, repeated or related "occurrences" shall be treated as a single "occurrence" and shall be deemed to occur at the time of the first act.
>
> 23. "Personal injury" means injury arising out of one or more of the following:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, "dwelling" or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> e. Oral or written publication in any manner, including electronic publication, of material that violates a person's right to privacy.
>
> 25. "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

; and

15. WHEREAS, it is Crestbrook's position that there is no coverage under

the Crestbrook Primary Policy for the Singh Action because the Singh Action does

seek "damages" due to "bodily injury," "property damage," or "personal injury" caused by an "occurrence;" and

    16.    WHEREAS, the Primary Policy includes the following exclusions:

### SECTION II — LIABILITY EXCLUSIONS
A. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to "bodily injury", "property damage" or "personal injury" from the following:

1. Expected or Intended Injury
Arising out of a willful, malicious, fraudulent or dishonest act or any act which is intended by any "insured", or that may be reasonably expected to result from such act to cause or result in "bodily injury", "personal injury" or "property damage, even if the resulting injury or damage:
    a. Is of a different kind, quality or degree than initially expected or intended; or
    b. Is sustained by a different person, entity or property than initially expected or intended….

2. Criminal Acts
Arising out of an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime.

### B. Coverage E — Personal Liability
Coverage E — Personal Liability does not apply to:

2. Contractual Liability
Any loss arising from any contract or agreement entered into by an "insured".
However, this Exclusion B.2. does not apply to written contracts:
a. That directly relate to the ownership, maintenance or use of an "insured location"; or
b. Where the liability of others is assumed by you prior to an "occurrence";
unless excluded in B.1. above or elsewhere in this policy.

3. "Insured's" Property
"Property damage" to property owned, produced or distributed by an "insured". This includes costs or expenses incurred by an

"insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

4. Property of Others
"Property damage" to property rented to, occupied or used by, or in the care of an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore of maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location"….

5. Sale of Property
Arising out of any written or oral agreement made by you or others on your behalf which is related to the sale of any property….

10. Financial Guarantees
Arising out of any "insured's" financial guarantee of the financial performance of any "insured", other individual or organization.

11. Punitive or Exemplary Damages
Arising out of any of the following:
a. Judgments;
b. Costs;
c. Attorney fees; or
d. Claims;
against an "insured" for punitive or exemplary "damages". Punitive or exemplary "damages" also include any "damages" awarded pursuant to statute in the form of double, treble or other multiple "damages" in excess of compensatory "damages". In addition, coverage does not apply for restitution, if the result of a criminal court order.

; and

17. WHEREAS, it is Crestbrook's position that there is no coverage under the Crestbrook Primary Policy for the Singh Action because these exclusions bar or limit coverage for the claims and damages in the Singh Action; and

18.     WHEREAS, The Excess Policy contains the following relevant terms and conditions:

> 1. Excess Liability Coverage
> We will pay "damages" an "insured" is legally obligated to pay because of an "occurrence" covered by this policy anywhere in the world:
> a. In excess of the "required underlying insurance" or the minimum required underlying limits shown in the Declarations, whichever is greater. This coverage will "follow form"; or
> b. From the first dollar of "damages" where coverage provided by "required underlying insurance" does not apply or "required underlying insurance" is not required, unless stated otherwise or an exclusion applies.
>
> * * *
>
> 6. Defense Coverage and Claims Expense
>
> a. We will defend a suit against an "insured", with attorneys of our choice, resulting from an "occurrence" covered by this policy and where:
>
> (1) The "required underlying insurance" has been exhausted by payment of claims; or
>
> (2) No "required underlying insurance" applies;
>
> even if the allegations of the suit are groundless, false or fraudulent. We provide this defense at our expense….
>
> c. We have the right, but not the duty, to defend any suit against an "insured" seeking "damages" covered under this policy and also covered by the "required underlying insurance" shown in the Declarations. We may join, at our own expense, with the "insured" or any insurer who provides coverage for an "occurrence" in a "listed underlying policy" in the investigation, defense and settlement of any claim or suit that we believe may require payment under this policy. However, we will not contribute to costs and expenses incurred by any other insurer who provides coverage in a "listed underlying policy", and which an insurer of such underlying policy(ies) s obligated to provide.
>
> d. When Our Duty to Defend Ends
>
> Our duty to defend any "insured" against any claim or suit arising out of any one "occurrence" ends when the amount we have paid in "damages" for that "occurrence" equals the Personal Excess Liability Policy Limit shown in the Declarations.

; and

19. WHEREAS, the Excess Policy also contains the following applicable definitions:

> 6. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.
>
> 8. "Damages" means the sum required to satisfy a covered claim, whether settled or agreed to in writing by us or resolved by judicial process or review.
>
> 13. "Follow form" means the coverage provided under this policy shall apply to the extent it is provided under "required underlying insurance", following the terms, definitions, conditions and exclusions of the "required underlying insurance".
>
> 21. "Occurrence" means an accident, including continuous or repeated exposure to the same general conditions which results in "bodily injury", "property damage" or "personal injury" caused by an "insured". The "occurrence" resulting in "bodily injury" or "property damage" must be during the policy period. The "occurrence" resulting in "personal injury" must have first taken place during the policy period.
> With respect to "personal injury" covered under this policy and under any prior and subsequent policy(ies) issued by us to you, all continuous, repeated or related "occurrences" shall be treated as a single "occurrence" and shall be deemed to occur at the time of the first such act.
>
> 23. "Personal injury" means injury arising out of one or more of the following:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> e. Oral or written publication in any manner, including electronic publication, or material that violates a person's right of privacy.
>
> 25. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

27. "Required underlying insurance" means the policy or policies providing an "insured" primary liability coverage that is required to be maintained in force for the types of exposures listed and at no less than the minimum limits as scheduled in the Declarations.

; and

20.  WHEREAS, it is Crestbrook's position that there is no coverage under the Excess Policy in the first instance because the Singh Action does not seek "damages" because of an "occurrence;" and

21.  WHEREAS, The Excess Policy includes the following exclusions:

### EXCLUSIONS

There is no coverage under this policy for any of the following:

1. Expected or Intended Injury
Arising out of a willful, malicious, fraudulent or dishonest act or any act which is intended by an "insured", or that may be reasonably expected to result from such act to cause or result in "bodily injury", "personal injury" or "property damage", even if the resulting injury or damage:
a. Is of a different kind, quality or degree than initially expected or intended; or
b. Is sustained by a different person, entity or property than initially expected or intended….

2. Criminal Acts
Arising out of an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged or convicted of a crime….

25. Contractual Liability
Arising from any contract or agreement entered into by an "insured":
However, this exclusion does not apply to written contracts:
a. That directly relate to the ownership, maintenance or use of an "insured location"; or
b. Where the liability of others is assumed by you prior to an "occurrence"; unless excluded elsewhere in this policy.

26. "Insured's" Property

"Property damage" to property owned, produced or distributed by an "insured". This includes costs or expenses incurred by an "insured" or others at the direction of an "insured" to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

27. Property of Others
For "property damage" to property of others rented to, occupied or used by, or in the care, custody or control of, an "insured"….

31. Punitive Damages
Arising out of any of the following:
a. Judgments;
b. Costs;
c. Attorney's fees; or
d. Claims
against an "insured" for punitive or exemplary "damages". Punitive or exemplary "damages" also include any "damages" awarded pursuant to statute in the form of double, treble or other multiple "damages" in excess of compensatory "damages". In addition, coverage does not apply for restitution, if the result of a criminal court order….

38. Sale of Property
Arising out of any written or oral statement made by you or others on your behalf which is related to the sale of any property….

40. Financial Guarantees
Arising out of any "insured's" financial guarantee of the financial performance of any "insured", other individual or organization.

; and

22.   WHEREAS, it is Crestbrook's position that there is no coverage under the Crestbrook Excess Policy for the Singh Action because these exclusions that bar or limit coverage for the damages claims; and

23.   WHEREAS, Crestbrook has conferred with Pryor, and have come to the following arrangements; and

24. WHEREAS, Crestbrook and Pryor represent that complete copies of The Primary Policy and The Excess Policy are attached to the Complaint in this case filed on June 27, 2023 (ECF No. 01); and

25. WHEREAS, Crestbrook commenced the instant declaratory judgment action on June 27, 2023 seeking a declaration that Crestbrook is not obligated to defend or indemnify Pryor, or pay any judgment, verdict, or settlement in the Singh Action; and

26. WHEREAS, Pryor does not dispute that Crestbrook has no obligation under The Primary Policy or The Excess Policy to defend or indemnify Pryor in the Singh Action or pay any judgment, verdict, or settlement on behalf of Pryor therein; and

27. WHEREAS, Pryor agrees that a judgment declaring Crestbrook has no duty under The Primary Policy or The Excess Policy to defend or indemnify Pryor in the Singh Action, should be entered; and

28. WHEREAS, Pryor states that he can be contacted and/or served in connection with the Singh Action through the following individual, telephone number, email and mailing address following entry of judgment in this matter;

> Russell L. Jones
> 320 South Rangeline Road
> Carmel, IN 46032
> Tel. 317.575.0320, ext. 23
> Fax 317.575.9570
> Email: rjones@russelljoneslaw.com

29. WHEREAS, the agreement to accept contact and/or service does not constitute and is not to be construed as a waiver of any defense regarding liability

that may be imposed on Pryor, including but not limited to fraud, constructive fraud, Fraudulent Misrepresentation in Seller's Residential Real Estate Disclosures against Pryor, Violation of Indiana Crime Victim's Relief Act IC 34-23-3-1, Breach of Purchase Agreement, or Breach of Assignment Contract, and by entering this consent judgment, Pryor does not accept any personal liability in the Singh Action; and

30. WHEREAS. Singh and Kaur, in reliance on Crestbrook's and Pryor's representation that a complete copy of The Primary Policy and The Excess Policy is attached the Complaint in this case filed on June 23, 2023, agree to be bound by the consent judgment entered in favor of Crestbrook in this regard.

In accordance with these representation and stipulations, the Court hereby enters judgment declaring that:

1. There is no coverage for the claims of damages alleged in the Singh Action under the Primary Policy and/or the Excess Policy;

2. Crestbrook Insurance Company has no duty under the Primary Policy or the Excess Policy to defend or indemnify Philip Pryor in the Singh Action, or to pay any judgment, verdict, award, or settlement on behalf of Pryor in connection therewith;

3. Inderjit Singh and Amarjit Kaur are equally bound by the determination and judgment of the Court in this declaratory judgment action; and

4. Inderjit Singh and Amarjit Kaur's claims against Philip Pryor shall continue in the Singh Action, but nothing in this Consent Judgment

shall be construed as accepting or imposing personal liability on Philip Pryor.

IT IS SO ORDERED.

Date: October 31, 2023

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk

BY: _____
Deputy Clerk, U.S. District Court

Served electronically on all ECF-registered counsel of record.